United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SYNOPSYS, INC.,

Plaintiff,

v.

MAGMA DESIGN AUTOMATION, INC.,

Defendant.

______________________________________/

No. C-04-3923 MMC

**ORDER GRANTING IN PART AND DENYING IN PART MAGMA'S MOTION TO DISMISS; VACATING HEARING**

(Docket No. 67)

Before the Court is the motion filed April 1, 2005 by defendant Magma Design Automation, Inc. ("Magma") to dismiss the third, fourth, fifth, sixth, and seventh causes of action asserted against it in plaintiff Synopsys, Inc.'s ("Synopsys") First Amended Complaint. Synopsys has filed opposition, to which Magma has replied. Having considered the papers filed in support of and in opposition to the motion, the Court finds the matter appropriate for decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the May 20, 2005 hearing. For the reasons set forth below, the motion is GRANTED in part and DENIED in part.

**BACKGROUND**

Synopsys alleges that Magma infringes three patents: United States Patents Nos. 6,378,114 ("the '114 patent"), entitled "Method for the Physical Placement of an Integrated Circuit Adaptive to Netlist Changes"; 6,453,446 ("the '446 patent"), entitled "Timing Closure

Methodology"; and 6,725,438 ("the '438 patent"), which also is entitled "Timing Closure Methodology." (See Compl. ¶¶ 83-93.) In the '114 patent, Lukas van Ginneken ("van Ginneken") is identified as a co-inventor, and in the '446 and '438 patents, van Ginneken is identified as the sole inventor. (See id. Exs. G, H, I at 1.) The '114 patent, on its face, identifies Synopsys as the assignee. (See id. Ex. I at 1.) The '446 and '438 patents, however, identify Magma as the assignee. (See id. Exs. G and H at 1.) Synopsys alleges that it is the rightful owner of all three patents as a result of a Proprietary Information and Inventions Agreement ("Agreement") that van Ginneken, a former employee of Synopsys, entered into with Synopsys on May 17, 1995. (See id. ¶¶ 11-19, 87-88.) Synopsys further alleges that Magma misappropriated technology originally conceived at Synopsys, through the acts of van Ginneken, a founder of Magma and former employee of Synopsys.[1] (See, e.g., id. ¶¶ 7, 41-48.)

Synopsys alleges it hired van Ginneken in 1995 to play a significant role in leading the development of Synopsys' logic synthesis and related technologies, and required him to sign the Agreement as a condition of his employment. (See id. ¶ 10 and Ex. A.) The Agreement provides that all "Proprietary Information" is the "sole property" of Synopsys, and defines the term "Proprietary Information" to include information that "has been created, discovered, developed or otherwise become known to [Synopsys] (including, without limitation, information created discovered or developed by, or made known to, [van Ginneken] during the period of or arising out of [his] employment by [Synopsys]) and/or in which property rights have been assigned, licensed, or otherwise conveyed to [Synopsys]," including, but not limited to, "trade secrets, processes, data and know-how, computer software, improvements, inventions, works of authorship, techniques, marketing plans, strategies, forecasts and copyrightable material and customer lists." (See id. Ex. A ¶¶ 1 and 3(A).) The Agreement further provides that van Ginneken assigns to Synopsys any

[1] Although Synopsys asserted claims against van Ginneken in its First Amended Complaint, those claims were voluntarily dismissed by Synopsys on April 11, 2005. (See Docket No. 89.)

rights he may have in such Proprietary Information, and that Synopsys "shall be sole owner of all patents, copyrights and other rights in connection therewith." (See id. ¶ 3(A).) In the Agreement, van Ginneken also agrees that he "will not use or disclose any Proprietary Information or anything relating to it without the written consent of [Synopsys]." (See id. ¶ 3(B).) In addition, the Agreement provides that all Inventions by van Ginneken during his employment "shall be the sole property of [Synopsys]" and that any rights van Ginneken "may have or acquire in such Inventions" are assigned to Synopsys. (See id. ¶ 3(D).)

Synopsys alleges that in late 1995 or early 1996, van Ginneken, while he was employed by Synopsys, "developed the idea of creating an EDA product that would perform particular inventions using the concept of fixed timing," which concept is also known as "constant delay." (See id. ¶¶ 22-23.) In addition, van Ginneken, by early 1996, while employed by Synopsys, is alleged to have developed inventions pertaining to the use of "gain-based synthesis," which, according to Synopsys, "is one of the ways in which the fixed timing concept can be implemented in a logic synthesis and/or placement tool." (See id. ¶ 25.) Synopsys further alleges that in order to obtain patent protection for the fixed timing and gain-based synthesis inventions, van Ginneken worked with Synopsys' former outside patent counsel to draft patent applications, which Synopsys maintained as proprietary and confidential information,[2] (see id. ¶¶ 35-37); van Ginneken also drafted a white paper on the fixed timing inventions, (see id. ¶¶ 38-39). Synopsys contends the inventions and the documentation of the inventions were the exclusive property of Synopsys, and were assigned to Synopsys the instant they were conceived, pursuant to the terms of the Agreement. (See id. ¶ 40.)

At some point in 1996, according to Synopsys, van Ginneken decided to resign from Synopsys. (See id. ¶ 41.) Synopsys alleges that van Ginneken formed a conspiracy with Rajeev Madhavan and other founders of Magma to develop products for Magma using the fixed timing and gain-based synthesis inventions he developed at Synopsys. (See id.

[2] On April 23, 2002, the '114 patent was issued to Synopsys. (See id. ¶ 82.)

¶ 43.) In May 1997, van Ginneken formally resigned from Synopsys. (See id. ¶ 42.) Synopsys alleges that van Ginneken resigned in order to join Magma, which had been incorporated on April 1, 1997. (See id.) Synopsys contends that van Ginneken secretly misappropriated the information contained in the draft patent applications and at least one white paper "for the purpose of using van Ginneken's inventions as the core technical foundation for Magma products." (See id. ¶¶ 44-45.)

In a letter to Magma dated July 23, 1997, Synopsys enclosed a copy of van Ginneken's Agreement with Synopsys and asked Magma to confirm in writing that it would not use any confidential or proprietary information of Synopsys. (See id. ¶ 50 and Ex. C.) In a letter dated August 18, 1997, Magma, through its counsel, assured Synopsys that van Ginneken intended to honor his obligations under the Agreement, and that Magma was "in the practice of taking appropriate steps to protect . . . the trade secrets of its employees' former employers." (See id. ¶ 52 and Ex. D.) Synopsys contends this representation was false because at the time it was made, Magma had already misappropriated information contained in a confidential patent application drafted for Synopsys as well as information contained in at least one confidential Synopsys white paper, and had already begun to use the information to develop its products and draft patent applications. (See id.) Moreover, according to Synopsys, the exhibits to van Ginneken's employment agreement with Magma expressly informed Magma that the white paper discussing his constant delay ideas was developed at Synopsys. (See id. ¶ 55.)

In 1998, Magma invited Synopsys to attend a meeting to discuss the possibility of a business arrangement between the two companies. (See id. ¶ 63.) At that meeting, Synopsys alleges, Magma knowingly presented the fixed timing methodology being used at Magma as having been developed at Magma. (See id. ¶ 63.) Synopsys alleges Magma made similar misrepresentations in the press and in public filings with the Securities and Exchange Commission. (See id. ¶¶ 66-71.) By making such misrepresentations, Synopsys alleges, Magma fraudulently induced Synopsys to forgo asserting legal claims against Magma or van Ginneken and to forgo pursuing its legal rights. (See id. ¶ 70.)

Synopsys alleges that Magma extensively copied the information contained in the misappropriated documents in order to create patent applications that ultimately resulted in issuance of patents to Magma, including the '446 patent and the '438 patent. (See id. ¶¶ 19, 46, 73.) The '446 patent was issued September 17, 2002. (See id. Ex. G.) The '438 patent was issued April 20, 2004. (See id. Ex. H.) Synopsys further alleges that Magma used the inventions it allegedly misappropriated from Synopsys, labeled them as Magma's "FixedTiming" methodology, incorporated them into its product line, and used those inventions as a core technical foundation for its products. (See id. ¶ 48.)

In a letter dated July 1, 2004, Magma expressed concerns to Synopsys that Synopsys' implementation of a gain-based delay model in its Design Compiler product infringed Magma's '446 and '438 patents. (See id. ¶ 76 and Ex. E.) After receiving the letter, Synopsys "discovered that the inventions in these patents had been misappropriated from Synopsys, and that Magma had repeatedly misled Synopsys in order to hide the evidence of its wrongful conduct." (See id. ¶ 77.) Synopsys alleges it ultimately was able to uncover the alleged wrongdoing because it was able to compare the language of the '446 and '438 patents to the confidential information prepared by van Ginneken at Synopsys. (See id.)

In a letter dated September 17, 2004, Synopsys informed Magma that, pursuant to Synopsys' Agreement with van Ginneken, Synopsys was the rightful owner of the inventions in the '446 and '438 patents. (See id. ¶ 78 and Ex. F.) Synopsys requested that Magma take all necessary steps to ensure that the records of the Patent and Trademark Office reflected Synopsys' ownership of the patents. (See id.) Concurrently, Synopsys filed the instant action against Magma. Synopsys currently asserts six causes of action against Magma: (1) infringement of the '114 patent; (2) inducing van Ginneken to breach his Agreement with Synopsys; (3) fraud; (4) conversion; (5) unjust enrichment/constructive trust; and (6) unfair competition.

Magma has filed an answer and counterclaim in which it asserts twenty affirmative defenses, and twelve counterclaims. (See Amended Answer to Complaint and

Counterclaims ("AAC"), filed November 24, 2004.) Magma alleges that van Ginneken developed the inventions disclosed in the '446 and '438 patents after he co-founded Magma in 1997, and without use of any proprietary or confidential information from Synopsys. (See id. ¶ 3.) Magma further alleges that the work by van Ginneken that led to the development of the invention claimed in the '114 patent was conducted as part of a project between IBM and Synopsys that was governed by a joint development agreement under which IBM and Synopsys share ownership of inventions resulting from the project. (See id. ¶ 7.) Magma further contends that, on March 24, 2004, it entered into a licensing agreement with IBM to practice all IBM patents issued by a certain date, and that all three patents at issue in the present lawsuit were filed before that date. (See id. ¶ 9.) Thus, according to Magma, it is licensed under the '114 patent, and if Synopsys demonstrates that it owns the '446 and '438 patents, Magma is licensed under those patents as well. (See id. ¶ 9.)

On December 10, 2004, Synopsys filed two separate motions to strike certain of the affirmative defenses and to dismiss certain of the counterclaims. On January 20, 2005, the Court granted in part and denied in part the motion to strike the affirmative defenses, and denied the motions to dismiss in their entirety.

By stipulation of the parties, Synopsys filed a First Amended Complaint on March 17, 2005. The instant motion to dismiss was filed on April 1, 2005.[3]

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) cannot be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

[3] Synopsys filed two motions for partial summary judgment on April 11, 2005. One motion seeks summary judgment, based on the doctrine of assignor estoppel, with respect to Magma's counterclaim for a declaration of invalidity of the '114 patent. The other motion seeks summary judgment on Synopsys' unfair competition claim. By stipulation of the parties, the hearing on both motions was continued to July 8, 2005.

under a cognizable legal theory. See Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).

Generally, a district court, in ruling on a Rule 12(b)(6) motion, may not consider any material beyond the pleadings. See Hal Roach Studios, Inc. v. Richard Feiner And Co., Inc., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). Material that is properly submitted as part of the complaint, however, may be considered. See id. Documents whose contents are alleged in the complaint, and whose authenticity no party questions, but which are not physically attached to the pleading, also may be considered. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). In addition, the Court may consider any document "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies," regardless of whether the document is referred to in the complaint. See Parrino v. FHP, Inc., 146 F.3d 699, 706 (9th Cir. 1998). Finally, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986).

In analyzing a motion to dismiss, the Court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Industries, Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). The Court may disregard factual allegations if such allegations are contradicted by the facts established by reference to exhibits attached to the complaint. See Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Conclusory allegations, unsupported by the facts alleged, need not be accepted as true. See Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992).

**DISCUSSION**

Magma moves to dismiss Synopsys' third cause of action, inducement of breach of contract; fourth cause of action, fraud; fifth cause of action, conversion; sixth cause of action, unjust enrichment/constructive trust; and seventh cause of action, unfair competition. Each of said causes of action was first asserted in Synopsys' First Amended Complaint, which, as noted, was filed March 17, 2005. Magma contends that each of said

causes of action is time-barred. Magma further argues that the fraud cause of action is subject to dismissal for the additional reasons that Synopsys cannot show justifiable reliance on the August 23, 1997 letter, and that Synopsys has failed to plead, with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, the fraudulent representations allegedly made by Magma at the 1998 meeting.

**A. Timeliness**

Magma argues that each of the challenged causes of action accrued more than four years prior to March 17, 2005, the date Synopsys filed the First Amended Complaint, and, consequently, are time-barred.[4] As noted, Synopsys alleges that it did not discover Magma's wrongdoing until July 2004, when Magma expressed concerns that Synopsys was infringing the '446 and '438 patents, whereupon Synopsys compared the language of the patents to the confidential documentation prepared by van Ginneken at Synopsys. (See FAC ¶ 77.) Until then, Synopsys alleges, Magma's alleged misrepresentations "concerning the origin of the inventions and technology in its products" had misled "Synopsys and others into believing that those inventions and technology had been independently developed by Magma exclusively from public domain sources." (See FAC ¶ 70.)

Magma argues that Synopsys had at least constructive notice of its claims no later than July 8, 1999, the date of publication of Magma's international patent application, filed with the World Intellectual Property Organization ("WIPO") pursuant to the Patent Cooperation Treaty and entitled "Timing Closure Methodology," ("PCT application"), (see Catalano Decl. Ex. A), which, Magma contends, is nearly identical to its application for the '446 patent and contains all the information Synopsys now contends was misappropriated

[4] The parties do not dispute that the longest statute of limitations available to Synopsys is four years. See Cal. Code Civ. Proc. § 337(1) (setting forth four-year statute of limitations for claim for breach of written contract); see also Cal. Bus. & Prof. Code § 17208 (providing for four-year statute of limitations for claims brought under § 17200); Cal. Code Civ. Proc. § 338(c) (setting forth three-year statute of limitations for conversion); Cal. Code Civ. Proc. § 338(d) (setting forth three-year statute of limitations for fraud); First Nationwide Savings v. Perry, 11 Cal. App. 4th 1657, 1670 (1992) (setting forth three-year statute of limitations for unjust enrichment).

by van Ginneken.[5] Attached to Synopsys' complaint is a chart comparing 38 portions of its confidential draft patent application with 38 portions of the specification of the '446 and '438 patents,[6] which comparison, Synopsys contends, shows "just some of the portions of the Patents that were blatantly copied from the confidential patent application drafted for Synopsys. (See FAC ¶ 47 and Ex. B.) Each of the 38 portions of the specification of the '446 and '438 patents set forth in that chart also appears in Magma's PCT application. (Compare FAC Ex. B with Catalano Decl. Ex. A.) Thus, had Synopsys reviewed Magma's PCT application, it would have been on actual notice of the claims it now asserts against Magma. Synopsys offers no argument to the contrary.

In its pleadings, however, Synopsys does not concede it was aware of the PCT application. Magma argues the publication of the PCT application, whether or not Synopsys in fact was aware of it, constitutes constructive notice of its contents sufficient to trigger the running of the statute of limitations as to all of Synopsis' claims. Magma points out that the United States Supreme Court has held that the issuance of a patent, and its recordation in the United States Patent and Trademark Office, provides "[c]onstructive notice of [its] existence . . . to all the world." See Sontag Chain Stores Co. v National Nut Co. of California, 310 U.S. 281, 295 (1940). "[C]onstructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay," however; a party is only "chargeable with such knowledge as he might have obtained upon inquiry, provided

---

[5] As noted, in ruling on a motion to dismiss, the Court may consider matters that are subject to judicial notice. See Mack v. South Bay Beer Distributors, Inc., 798 F.2d at 1282; see also Fed. R. Ev. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). The Federal Circuit has held that patents are publicly accessible documents and thus subject to judicial notice. See Hoganas AB v. Dresser Industries, Inc., 9 F.3d 948, 954 n.27 (Fed. Cir. 1993). Published PCT patent applications similarly are publicly accessible on the WIPO website, see http://www.wipo.int/ipdl/en/, and it is undisputed that Magma's PCT application was published by WIPO on July 8, 1999. (See Catalano Decl. Ex. A at 1.) Accordingly, the Court will take judicial notice of the publication of Magma's PCT application in ruling on the instant motion to dismiss.

[6] The two patents share a common specification.

the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." See Advanced Cardiovascular Systems, Inc. v. SciMed Life Systems, Inc., 988 F.2d 1157, 1161-62 (Fed. Cir. 1993) (holding Sontag Chain Stores inapplicable to issue of laches in patent action). Similarly, under the California delayed discovery rule,[7] the California Supreme Court recently has held that the statute of limitations does not begin to run until the plaintiff "has reason to suspect an injury and some wrongful cause"; a plaintiff is "required to conduct a reasonable investigation after becoming aware of an injury" and is "charged with knowledge of the information that would have been revealed by such an investigation." See Fox v. Ethicon Endo-Surgery, 2005 WL 1075033 at *1, *5 (Cal. May 9, 2005) (applying delayed discovery rule in medical malpractice/products liability action). Accordingly, Synopsys was not chargeable with notice of the publication of Magma's PCT application unless and until Synopsys had reason to suspect that its confidential information had been misappropriated, thus triggering a duty for Synopsys to inquire further.

Magma argues that Synopsys' duty to inquire further was triggered when it received the August 18, 1997 letter in which Magma's counsel responded to Synopsys' July 23, 1997 inquiry about Magma's intent to honor van Ginneken's Agreement with Synopsys. As Magma correctly points out, its counsel stated therein that van Ginneken's technical skills "did not originate during his employment at Synopsys," and that "the alleged trade secrets surrounding constant delay techniques alleged by Synopsys have been published by several authors as early as 1990." (See Compl. Ex. D at 2.) As noted, however, the letter also stated that "van Ginneken intends to honor his obligations under his Proprietary Information Agreement with Synopsys"; additionally, it stated that Magma had required van Ginneken to sign an agreement not to use any proprietary information of any of his former employers, and that "Magma will reiterate to Dr. van Ginneken his duty to abide by his Synopsys Agreement." (See id. at 1-2.) Taking the letter as a whole, the Court cannot find

---

[7] As noted, all of the claims implicated by the instant motion arise under California law.

as a matter of law that, based thereon, Synopsys had "reason to suspect an injury." See Fox, 2005 WL 1075033 at *1; see also Calloway Golf Co. v. Dunlop Slazenger Group Americas, Inc. 318 F. Supp. 2d 222, 223-25 (D. Del. 2004) (applying California law and finding running of statute of limitations not triggered where plaintiff asked defendant to confirm that former employee would not use plaintiff's proprietary golf ball technology in employment with defendant, and defendant refused to concede such information was proprietary but nonetheless assured plaintiff that defendant would not use plaintiff's proprietary information; court found defendant's response "gave [plaintiff] the assurances it needed to refrain from litigation").[8]

Magma also points to Synopsys' allegations that Magma made various public statements about "constant delay and gain-based synthesis methodology" between 1998 and 2000, (see FAC ¶¶ 62-71), which statements, Magma contends, put Synopsys on actual and constructive notice that Magma considered these techniques as not being proprietary to Synopsys. As Magma has made no effort to compare Synopsys' alleged proprietary information to the content of these statements, however, the Court cannot conclude as a matter of law that Magma's statements about its technology were sufficient to put Synopsys on notice with respect to Magma's alleged misappropriation of Synopsys' technology.

Accordingly, the Court concludes that Magma, at this stage of the proceedings, has failed to demonstrate as a matter of law that Synopsys' claims are time-barred.[9]

---

[8] The Court also notes that Synopsys states in its opposition, although it does not so allege in its complaint, that the articles to which Magma referred relate only to "the bare concept of constant delay" and "not the particular application of constant delay to EDA tools that van Ginneken invented at Synopsys." (See Opp. at 5.) Synopsys further states, in its opposition, that Magma's reference to such articles gave Synopsys the impression that any work Magma might do in the future concerning constant delay would be based only on information in the public domain and not on the allegedly confidential technology developed at Synopsys. (See id.)

[9] In light of this finding, the Court does not reach Synopsys' additional arguments that the statute of limitations has not run by reason of Magma's alleged fraudulent concealment, conspiracy with van Ginneken, and continuing wrongful conduct.

**B. Fraud Claim**

Synopsys alleges a fraud claim against Magma based on two separate theories. First, Synopsys alleges that Magma, in its August 23, 1997 letter to Synopsys, made fraudulent misrepresentations about Magma's intent to ensure that van Ginneken honored his Agreement to protect Synopsys' proprietary information. (See FAC ¶ 108.) Second, Synopsys alleges that Magma made fraudulent misrepresentations during its 1998 meeting with Synopsys, as well as in various public statements, that Magma's fixed timing methodology was developed by Magma, when, in fact, it was misappropriated from Synopsys. (See id. ¶ 109.)

As noted, Magma moves to dismiss Synopsys' fraud claim on two grounds. First, Magma argues, Synopsys cannot show justifiable reliance on Magma's statements in the August 23, 1997 letter. Second, Magma argues that Synopsys has failed to plead, with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, the allegedly fraudulent misrepresentations made during the 1998 meeting.

**1. Justifiable Reliance**

"The elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 990 (2004). A plaintiff adequately alleges justifiable reliance by alleging "circumstances were such to make it reasonable for plaintiff to accept defendant's statements without an independent inquiry or investigation." See Wilhelm v. Pray, Price, Williams & Russell, 186 Cal. App. 3d 1324, 1332 (1986).

Magma argues that Synopsys cannot base a fraud claim on the August 23, 1997 letter because, based on that letter, Synopsys had reason to suspect that van Ginneken was in violation of his Agreement with Synopsys, and possessed sufficient information to confirm its suspicions. For the reasons set forth above, however, the Court cannot conclude as a matter of law that the August 23, 1997 letter placed Synopsys on notice of Magma's allegedly wrongful acts. Consequently, the Court cannot conclude, as a matter of

law, that Synopsys is unable to show justifiable reliance on the statements made in Magma's August 23, 1997 letter.

**B. Rule 9(b)**

Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." See Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must plead evidentiary facts of the time and place of the fraud, the persons involved, the statements made, and an explanation of why or how such statements are false or misleading. See In re GlenFed, Inc. Sec. Litig., 42 F.3d 1541, 1547-48 and n.7 (9th Cir. 1994) (en banc).

As noted, Magma moves to dismiss Synopsys' fraud claim, to the extent such claim is based on misrepresentations made by Magma during a 1998 meeting with Synopsys, on the ground Synopsys fails to set forth the alleged misrepresentations with particularity. Specifically, Magma argues that Synopsys has failed to allege the date of the meeting, the persons who attended the meeting, where the meeting took place, the precise misrepresentations made by Magma personnel at that meeting, and why those statements were false when made. Synopsys does not argue that its allegations with respect to the 1998 meeting are adequately pleaded. Rather, Synopsys argues that the Court should not dismiss Synopsys' fraud claim based on pleading deficiencies, and seeks leave to replead its allegations with respect to the 1998 meeting.

The Court agrees with Magma that Synopsys' fraud allegations based on the 1998 meeting fail to meet the pleading requirements of Rule 9(b), and will afford Synopsys the opportunity to cure the deficiencies noted.

**CONCLUSION**

For the reasons set forth above, Magma's motion to dismiss is hereby GRANTED in part and DENIED in part, as follows:

1. Magma's motion to dismiss the third, fourth, fifth, sixth, and seventh causes of action as time-barred is DENIED.

2. Magma's motion to dismiss the fraud claim, to the extent it is based on

statements made in Magma's August 23, 1997 letter, is DENIED.

3. Magma's motion to dismiss the fraud claim, to the extent it is based on statements made at a 1998 meeting with Synopsys, is GRANTED, and such claim is DISMISSED, with leave to amend.

4. Synopsys shall file an amended complaint within 20 days of the date of this order. If Synopsys fails to timely file an amended complaint, its fraud claim, to the extent such claim is based on statements made at the 1998 meeting, will be dismissed with prejudice.

This order terminates Docket No. 67.

**IT IS SO ORDERED.**

Dated: May 18, 2005

/s/ Maxine M. Chesney
MAXINE M. CHESNEY
United States District Judge