United States District Court

For the Northern District of California

1

2

3

4

5

6                          IN THE UNITED STATES DISTRICT COURT

7                         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9    SYNOPSYS, INC.,                          No. C-04-3923 MMC

10              Plaintiff,                      **ORDER GRANTING SYNOPSYS'S**
                                                **MOTION FOR PRELIMINARY**
11        v.                                    **INJUNCTION; VACATING HEARING**

12   MAGMA DESIGN AUTOMATION, INC.,             (Docket Nos. 342, 409)

13              Defendant.

14   _____/

15

16        Before the Court is plaintiff Synopsys, Inc.'s ("Synopsys") motion, filed July 29, 2005

17   and revised September 16, 2005, for a preliminary injunction restraining defendant Magma

18   Design Automation, Inc. ("Magma") from, inter alia, abandoning, dedicating to the public, or

19   seeking reexamination of United States Patents Nos. 6,453,446 ("'446 Patent") and

20   6,725,438 ("'438 Patent") pending final resolution of the instant action or, alternatively,

21   pending the Court's determination of ownership of said patents.[1]  Magma has filed

22   opposition to the motion, to which Synopsys has replied.  Having considered the papers

23   filed in support of and in opposition to the motion, the Court finds the matter appropriate for

24   decision without oral argument, see Civil L.R. 7-1(b), and hereby VACATES the

25   December 2, 2005 hearing.  For the reasons set forth below, the motion is GRANTED.

26        In determining whether to grant a motion for preliminary injunction, the Court weighs

27   _____

28        [1] The Court issued a temporary restraining order against Magma on August 30,
     2005.  By stipulation of the parties, the temporary restraining order remains in effect until
     December 2, 2005.  (See Stipulation and Order re: Modified Hearing and Briefing
     Schedule, filed September 23, 2005, ¶ 4.)

"four equitable factors: the movant's likelihood of success on the merits; the possibility of irreparable injury to the moving party; the extent to which the balance of hardships favors each party; and whether the public interest will be advanced by granting the preliminary relief."  See Overstreet v. United Brotherhood of Carpenters and Joiners of America, Local Union No. 1506, 409 F.3d 1199, 1207 (9th Cir. 2005).  To obtain a preliminary injunction, "a moving party must show either a combination of probable success on the merits and the possibility of irreparable harm or serious questions going to the merits, the balance of hardships tipping sharply in its favor, and at least a fair chance of success on the merits."  See id. (internal quotation and citations omitted).  "For the purposes of injunctive relief, 'serious questions' refers to questions which cannot be resolved one way or the other at the hearing on the injunction and as to which the court perceives a need to preserve the status quo lest one side prevent resolution of the questions or execution of any judgment by altering the status quo."  Republic of the Phillippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988).  "Serious questions need not promise a certainty of success, nor even present a probability of success, but must involve a fair chance of success on the merits."  Id. (internal quotation and citation omitted).

Here, for the reasons set forth below, Synopsys has demonstrated a serious question exists as to ownership of the patents and, indeed, has demonstrated a probability of success on the issue of whether it is a co-owner of the patents.

In particular, Lukas van Ginneken ("van Ginneken"), the named inventor of the '446 and '438 patents and a former employee of both Synopsys and Magma, signed a Proprietary Information and Inventions Agreement ("Agreement") with respect to his work at Synopsys, by which he agreed that all inventions he "ma[d]e, conceive[d], reduce[d] to practice, or develop[ed] (in whole or in part, either alone or jointly with others) during [his] employment" with Synopsys "shall be the sole property" of Synopsys.  (See Edelman Decl., filed July 29, 2005, Ex. B ¶ 3(D).)  In that agreement, van Ginneken expressly agreed that Synopsys "shall be the sole owner of all patents" on such inventions, and assigned to Synopsys "any rights [he] may have or acquire in such [i]nventions."  (See id.)  In a

2

1   declaration dated March 10, 2005, van Ginneken attests that the '446 and the '438 patents

2   each disclose inventions that he "conceived while employed at Synopsys."[2]  (See van

3   Ginneken Decl. ¶¶ 44-45.)

4        In addition, van Ginneken attests that he worked with Synopsys's patent counsel to

5   draft a patent application for the inventions he conceived while working at Synopsys, that at

6   least two such drafts were prepared, that he conceived all inventions disclosed in those

7   draft applications while he worked at Synopsys, and that the draft applications describe the

8   same inventions later disclosed in the '446 and '438 patents.  (See van Ginneken Decl.

9   ¶¶ 21-23.)  Synopsys has provided corroboration of van Ginneken's statements by

10  submitting a chart itemizing significant similarities between one of the draft patent

11  applications prepared by Synopsys and the shared specification of the '446 and '438

12  patents.[3]  (See Edelman Decl. Ex. K.)

13       Further, van Ginneken attests, he co-authored a white paper, titled "The Constant

14  Delay Methodology," while he worked at Synopsys, which, he attests, sets forth "several

15  aspects of the inventions contained in the ['446 and '438] Patents."  (See van Ginneken

16  Decl. ¶ 24.)  Synopsys has provided corroboration of van Ginneken's statement by

17  submitting a chart itemizing significant similarities between the above-referenced white

18  paper and the specification shared by the '446 and '438 patents.  (See chart at Edelman

19  Decl. Ex. L.)

20       Van Ginneken also attests that "[b]eginning in 1997," after van Ginneken joined

21  _____

22       [2] Although, as Magma points out, van Ginneken testified at deposition that he felt
    "pressured or intimidated" into signing said declaration because of the existence of
23  Synopsys's lawsuit against him, (see Catalano Decl. Ex. 6 (van Ginneken Dep.) at 17:23-
    18:4), van Ginneken testified that he participated in the drafting of the declaration, (see id.
24  at 16:7-24), and did not testify that any of the statements contained in the declaration are
    untrue.

25       [3] Magma contends the claims of the Synopsys draft patent applications are directed
    to a different invention than that claimed in the '446 patent because the Synopsys draft
26  patents require delay to be held constant while the '446 patent requires an "initial intended
    delay."  The Court notes, however, that the two draft patent applications and the '446
27  patent all expressly state delay may be changed or adjusted.  (See Catalano Decl. Ex. 2 at
    8; id. Ex. 3 at SY004583, SY004586; Third Amended Complaint, Ex. H ('446 Patent) at
28  18:14-35.)

Magma, "Magma proceeded to extensively use the inventions and information described in the Synopsys draft patent application and confidential white paper in order to create the patent applications that would ultimately result in the issuance of the ['446 and '438] Patents."  (See van Ginneken Decl. ¶ 33.)

In addition, Magma, in its supplemental responses to Synopsys's First Set of Interrogatories, concedes that all claims of the '446 and '438 patents were conceived by van Ginneken, although it further contends that the claims were conceived not by van Ginneken alone, but, rather, by van Ginneken in conjunction with employees of IBM or Magma.[4]  (See Edelman Decl. Ex. N at 2:18-3-8.)  Moreover, in response to an interrogatory asking Magma to state all facts supporting the statement that van Ginneken developed the inventions disclosed in the Magma patents after he co-founded Magma in 1997, Magma stated that only claims 10-18 and 27-32 of the '446 patent, and claims 17 and 18 of the '438 patent, were conceived by van Ginneken after he resigned from Synopsys, thus implicitly conceding that the other claims of the '446 and '438 patents were conceived before van Ginneken resigned from Synopsys.  (See id. at 6:3-6, 6:15-18.)  Indeed, Magma expressly conceded the point in its supplemental responses to Synopsys's first set of requests for admission, in which it admitted that the methods described in claims 1-9, 19-26, and 33-54 of the '446 patent and claims 1-16 and 19 of the '438 patent were conceived before van Ginneken resigned from Synopsys.  (See Edelman Decl. Ex. O at 3:17-28, 5:6-17.)  Thus, Magma and van Ginneken each have conceded that van Ginneken was involved in the conception of at least some of the claims of the '446 and '438 patents while van Ginneken was employed at Synopsys.  Pursuant to the Agreement between van Ginneken and Synopsys, all inventions van Ginneken conceived in whole or in part, alone or jointly with others, while he worked at Synopsys, are the property of Synopsys, as are all

---

[4] Magma states in its supplemental interrogatory responses that claims 1-9, 19-26, and 33-54 of the '446 Patent and claims 1-16 and 19 of the '438 Patent were conceived jointly by van Ginneken and Prabakhar Kudva of IBM, and that claims 10-18 and 27-32 of the '446 Patent as well as claims 17 and 18 of the '438 patent were conceived jointly by van Ginneken and Patrick Groeneveld of Magma.  (See Edelman Decl. Ex. N at 2:20-3:5.)

patents obtained in connection therewith.  (See id. Ex. B ¶ 3(D).)  The Federal Circuit has

held that an assignment of rights to a future invention is effective to transfer to the assignee

legal title to the patent rights accruing as a result of a subsequent application for a patent

on the assigned invention.  See Filmtec Corp. v. Allied-Signal, Inc., 939 F.2d 1568, 1572-74

(Fed. Cir. 1991).  Thus, Synopsys has established, at a minimum, a probability of

demonstrating co-ownership[5] of the '446 and '438 patents.[6]

As to the possibility of irreparable injury and the balance of hardships, Synopsys

likely would be precluded from participating in the reexaminations Magma states it intends

to initiate immediately if the Court denies the instant motion.  (See Opp. at 1.)  By statute,

reexamination proceedings are conducted by the Patent and Trademark Office ("PTO"),

with the participation of the patent owner and the person seeking reexamination.  See 35

U.S.C. §§ 302-305; see also 37 C.F.R. § 3.71 (noting all partial assignees of patent must

participate in reexamination).  As Magma is the patent owner of record, Synopsys likely

would be excluded from any such proceedings, despite its claim to ownership of the '446

and '438 Patents.  Indeed, the PTO has previously indicated an unwillingness to become

involved in the ownership dispute between Synopsys and Magma, or to allow Synopsys to

participate in the prosecution of any continuation patent applications that derive from the

'446 and '438 patents.  (See Edelman Decl. Ex. R (April 27, 2005 order dismissing

Synopsys's petition to suspend prosecution of United States Patent Application No.

---

[5] Much of the parties' briefing is devoted to Magma's argument that any ownership rights Synopsys may have in the inventions described in the '446 and '438 patents are shared with IBM, and that, consequently, Synopsys cannot demonstrate sole ownership of the patents.  The relevant issue, however, for purposes of the instant motion, is not whether Synopsys can demonstrate that it is the sole owner of the patents, but whether it has any ownership rights in the patents that could be irreparably injured if Magma were permitted to attempt to alter the scope of the patents prior to a final determination of patent ownership.

[6] Synopsys also seeks an order enjoining Magma from taking any action in the PTO or any foreign patent office with respect to "progenies" of the '446 and '438 patents and Continuation Application No. 10/828,547 as owner thereof, but has made no showing that van Ginneken conceived the inventions set forth therein while he was employed at Synopsys.  Consequently, the Court will not enjoin Magma from taking any action with respect to "progenies" of the '446 and '438 patents and Continuation Application No. 10/828,547.

1  10/828,547 pending resolution of ownership dispute between Synopsys and Magma).)

2      Moreover, if Magma were permitted to seek reexamination, or to otherwise seek to

3  change the scope of the patents by, <u>inter</u> <u>alia</u>, abandoning, limiting, disclaiming, or

4  dedicating to the public any portion of the patents, any resulting limitation of the scope of

5  the patents likely could not be redressed should the Court later determine that Synopsys

6  has an ownership interest in the patents.  <u>See</u>, <u>e.g.</u>, <u>Altoona Publix Theatres, Inc. v.</u>

7  <u>American Tri-Ergon Corp.</u>, 294 U.S. 477, 492 (1935) ("To permit [an] abandoned claim to

8  be revived, with the presumption of validity, because the patentee had made an improper

9  use of the disclaimer, would be an inadmissible abuse of the patent law to the detriment of

10  the public.").  Accordingly, Synopsys has demonstrated a possibility of irreparable injury if

11  the Court were to deny the instant motion.

12      Magma, for its part, asserts that it will suffer severe hardship if the injunction is

13  granted because it will be precluded from seeking to narrow the patent claims in a

14  reexamination proceeding, and, consequently, will "be forced to defend against invalid

15  patents in this lawsuit."  (<u>See</u> Opp. at 22.)[7]  As noted, however, Magma's own

16  representations in this litigation suggest it is likely Magma is not the sole owner of the '446

17  and '438 patents.  Under such circumstances, Magma has no compelling interest in

18  seeking reexamination of the patents until ownership is determined, particularly since the

19  PTO has suggested that it will not permit Synopsys to participate in such proceedings

20  unless and until Synopsys obtains a final court order awarding title to Synopsys.  (<u>See</u>

21  Edelman Decl. Ex. R (April 27, 2005 order dismissing Synopsys's petition to suspend

22  prosecution of United States Patent Application No. 10/828,547 pending resolution of

23  ownership dispute between Synopsys and Magma).)

24      Magma also argues that it has an "unqualified statutory right," (<u>see</u> Opp. at 1), to

25  seek reexamination and that, consequently, Synopsys has no right to a permanent

26  injunction precluding Magma from seeking reexamination.  No motion for a permanent

27  ────────────────

28      [7] The Court notes that Magma could not be held liable for infringement of its own
patents.

1   injunction is pending, however, and Synopsys is not seeking to bar Magma, in perpetuity,

2   from seeking reexamination of the patents. The issue presently before the Court is whether

3   reexamination should be delayed until ownership of the patents is resolved, to ensure that

4   the actual owner(s) of the patents will have the opportunity to participate in any

5   reexamination proceeding that ultimately may be initiated.  See Manual of Patent

6   Examining Procedure ("MPEP") § 301 ("All parties having any portion of the ownership in

7   the patent property must act together as a composite entity in patent matters before the

8   Office.") (emphasis in original).  Synopsys seeks only to maintain the status quo, and to

9   ensure that the patents remain intact, until the Court determines the ownership of the

10  patents.  The Court finds, on the record before it, Synopsys has demonstrated not only the

11  possibility of irreparable injury, but that the balance of hardships tips sharply in its favor.[8]

12          The Court notes that in deciding whether to issue an injunction, the Court  must

13  consider, where applicable, "advancement of the public interest." See Johnson v.

14  California State Board of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (noting

15  "traditional equitable criteria" for preliminary injunctive relief includes, in certain cases,

16  "advancement of the public interest").  As the Federal Circuit has observed, "[t]he public

17  interest lies in having valid patents upheld and invalid patents rendered invalid, and hence

18  patents should be reexamined when a substantial question of patentability is raised."  See

19  In re Baker Hughes Inc., 215 F.3d 1297, 1302 (Fed. Cir. 2000.)  Regardless of who initiates

20  a reexamination, "the PTO is charged with making an independent determination

21  concerning the patentability of inventions."  See id.  Consequently, the public interest

22  weighs in favor of permitting reexamination where a question of validity exists.  The public

23  interest does not, however, favor the PTO's conducting such a proceeding without the input

24  of all of the owners of the patents. See MPEP § 301 ("All parties having any portion of the

25  ownership in the patent property must act together as a composite entity in patent matters

26  _____

27          [8] The Court is not persuaded by Magma's argument that Synopsys delayed unduly
    in seeking a preliminary injunction.  Synopsys promptly filed the instant motion when it
28  became aware that Magma might seek reexamination of the patents.

1   before the Office.") (emphasis in original).  As discussed, Synopsys has demonstrated a

2   serious question exists as to the ownership of the '446 and '438 patents and, indeed, has

3   demonstrated a likelihood that it can establish it is a co-owner of the '446 and '438 patents.

4   Under such circumstances, the public interest is not served by reexamination without

5   Synopsys's input, unless and until it is determined that Synopsys has no ownership rights

6   in the '446 and '438 patents.

7          Finally, the Court recognizes issuance of a preliminary injunction against Magma will

8   not necessarily prevent reexamination from occurring pending the Court's determination of

9   Synopsys's ownership rights in the patents.  Pursuant to 35 U.S.C. § 303, for example, the

10  PTO may initiate reexamination sua sponte.  In addition, third parties may seek

11  reexamination of the patents.  Any injunction the Court might issue against Magma would

12  not preclude the PTO or such other parties from initiating reexamination.  With such

13  possibility in mind, Synopsys asks the Court to order Magma to seek a stay of any

14  reexamination initiated by the PTO or a third party.  The Court declines to issue such an

15  order before any such reexamination has been initiated and the Court has had an

16  opportunity to consider the circumstances pertaining at that time.

17         For the reasons stated above, the Court finds issuance of a preliminary injunction is

18  appropriate.  The Court will enjoin Magma from taking any steps to destroy, abandon,

19  suspend, limit, disclaim, or seek reexamination of the '446 or '438 patents, or any part

20  thereof, pending resolution of the issue of ownership.

21         Accordingly, Synopsys's motion for a preliminary injunction is hereby GRANTED, as

22  set forth in a separate order filed concurrently herewith.

23         This order terminates Docket Nos. 342, 409.

24         **IT IS SO ORDERED.**

25  Dated: December 1, 2005

26                                                          MAXINE M. CHESNEY
                                                            United States District Judge

27

28

8