1   Martin Quinn

FILED

2   JAMS
    Two Embarcadero Center, Suite 1100, MAR 15  AM 11: 27
3   San Francisco, CA 94111
    Telephone: (415) 982-5267         RICHARD W. WIEKING
4   Fax: (415) 982-5287               CLERK, U.S. DISTRICT COURT
                                      NORTHERN DISTRICT OF CALIFORNIA

5   Special Master

6

7                          UNITED STATES DISTRICT COURT

8                         NORTHERN DISTRICT OF CALIFORNIA

9                              SAN FRANCISCO DIVISION

10

11  SYNOPSYS, INC,                        **Case No. C-04-03923 MMC**
                                          **JAMS Reference No. 1100046650**
12              Plaintiff,
                                          **SPECIAL MASTER'S ORDER NO.**
13      vs.                               **1: SYNOPSYS'S MOTION RE**
                                          **SCOPE OF PRIVILEGE WAIVER**
14  MAGMA DESIGN AUTOMATION,              **(Hrg. 2/1/06)**

    et al.,
15
                Defendants.
16

17

18
        The motion by Synopsys, Inc. to determine the scope of Magma Design Automation,
19
    Inc.'s waiver of attorney client privilege and work product protection was heard by Special
20
    Master Martin Quinn at JAMS San Francisco on February 1, 2006.  Counsel for both parties
21
22  attended and presented argument.  At the conclusion of the hearing, the parties asked that a

23  ruling be delayed while they discussed possible resolution of the dispute.  On February 13, 2006

24  the parties advised the Special Master they had been unable to come to an agreement.  Having
25
    reviewed and considered the written and oral arguments presented, the Special Master now
26
    makes the following order.
27

28

**SPECIAL MASTER'S ORDER NO. 1: SYNOPSYS'S MOTION RE SCOPE OF PRIVILEGE WAIVER**
**(Hrg. 2/1/06)**
1

1

## BACKGROUND FACTS

2

## BASIC CONTENTIONS IN THE ACTION

3

4

This is a patent infringement and unfair competition case dealing with two software

5

patents (Nos. 438 and 446) (the Patents") issued in the name of Magma that cover inventions by

6

Dr. Lukas van Ginneken. Dr. van Ginneken worked at Synopsys until mid-1997 when he left to

7

co-found Magma.

8

Synopsys alleges that Dr. van Ginneken conceived of the inventions that are the basis for

9

the Patents while he was employed at Synopsys. Therefore, Synopsys contends, the proprietary

10

agreement he signed while at Synopsys assigns ownership of the Patents to Synopsys, and

11

12

Magma is consequently infringing them. Synopsys also contends that IBM was a joint inventor

13

with Dr. van Ginneken, that IBM had equal rights as a co-inventor, and that IBM has

14

subsequently licensed to Synopsys this intellectual property.

15

16

Magma responds that Dr. van Ginneken developed the inventions covered by the Patents

17

after he left Synopsys, and that the inventions are independent of any research he did at

18

Synopsys. However, Magma also claims that Dr. van Ginneken engaged in "inequitable

19

conduct" in prosecuting the Patents without disclosing to the Patent & Trademark Office

20

("PTO") some prior art and IBM's status as a co-inventor.

21

22

## BASIC CONTENTIONS ON THIS MOTION

23

During this litigation Magma intentionally waived its attorney-client privilege and work

24

product protection as to the work of two of its law firms: Orrick Herrington & Sutcliffe that

25

performed a due diligence investigation to determine whether Magma's source code improperly

26

incorporated the intellectual property of any third party, and Pillsbury Winthrop that prosecuted

27

the Patents to their issuance in 2002 (No. 446) and 2004 (No. 438). Magma has produced or

28

agreed to produce all documents relating to Orrick's work, and all documents related to the prosecution of the Patents up through the date of the filing of this action (September 17, 2004)[1].

By this motion, Synopsys seeks to broaden the scope of Magma's waiver as to both Orrick and Pillsbury. As to Orrick, Synopsys seeks production of all communications and documents relating to whether the inventions claimed in the Patents were developed independently at Magma, or incorporated confidential information or intellectual property of Synopsys. As to Pillsbury, Synopsys seeks all information relating to the prosecution and enforcement of the inventions claimed in the Patents at any time, including continuations, progeny and foreign counterparts.

Magma initially argues that the motion is untimely because it is filed at the close of discovery long after the issues were known to Synopsys and because responding to the discovery Synopsys seeks would be unduly burdensome. On the merits, Magma contends that the limitations it has placed on its waivers are appropriate and lawful.

## ORRICK'S DUE DILIGENCE ASSIGNMENT

In its original Answer and Counterclaim, Magma alleged that in late 1998 or early 1999, Magma engaged the law firm of Orrick Herrington & Sutcliffe and an expert consultant to perform due diligence to determine (a) that the developers of the Magma's source code had not brought confidential information from Synopsys or any third party, and (b) that the source code independently at Magma without the incorporation of intellectual property of any third party. [Edelman decl., Exh. CC, ¶¶ 75-76, filed 10/21/04). Although there is some dispute as to what information Magma received about Orrick's conclusions, the Orrick attorney who led the

---

[1] Magma initially restricted its waiver to the dates of issuance of the Patents, but as a compromise has offered to extend it to the filing date of this action.

SPECIAL MASTER'S ORDER NO. 1: SYNOPSYS'S MOTION RE SCOPE OF PRIVILEGE WAIVER
(Hrg. 2/1/06)
3

assignment testified that he reported the "outcome of the due diligence" to Magma's CEO.

(Edelman decl, Exh. S, p. 217).

## PILLSBURY WINTHROP'S WORK FOR MAGMA

Magma engaged the Pillsbury Winthrop law firm to prosecute the Patents. After Dr. van Ginneken left Synopsys to co-found Magma, in July 1997 Synopsys sought written assurances from Magma that he would not disclose or use any confidential intellectual property belonging to Synopsys. Pillsbury responded on behalf of Magma, assuring Synopsys that Dr. van Ginneken would honor his obligations under his proprietary agreement with Synopsys. (Edelman decl., Exh. J & K)

## MAGMA'S INTENTIONAL PRIVILEGE WAIVER

As soon as it filed its Answer that alleged the work by Orrick, Magma voluntarily produced all documents relating to Orrick's due diligence assignment, and has produced for deposition both Orrick lawyers and the expert consultant to testify about confidential communications and work product relating to Orrick's work. However, Magma has blocked Synopsys from any discovery from itself and its other law firms[2] as to privileged communications pertaining to the Patents on the ground that such communications are beyond the scope of the Orrick waiver.

On April 1, 2005, Magma advised Synopsys that it was asserting that Dr. van Genneken had engaged in "inequitable conduct" toward the PTO, and that Magma was accordingly waiving its attorney-client privilege as to Pillsbury's work in the initial prosecution of the Patents.

---

[2] According to Magma, other than Orrick and Pillsbury the following law firms have been involved in relevant issues: Fish & Richardson was Magma's first litigation counsel in this case; after a brief time, it was replaced by O'Melveny & Myers. Milbank Tweed Hadley & McCoy and Pooley and Oliver have also acted as litigation counsel for Magma in this case. Howard Rice Nemerovski Canady Falk & Rabkin provided advice to Magma in connection with issues in this case. [Opposition 17:22-18:3]

However, Magma has blocked Synopsys from any discovery as to enforcement of the Patents, prosecution of continuation or foreign patents, and any prosecution of the Patents beyond the date of filing of this lawsuit.

## ANALYSIS

### THE MOTION IS TIMELY

Synopsys filed this motion on November 7, 2005, three days before close of fact discovery. Magma waived its privilege as to Orrick in October 2004 or shortly thereafter, and waived its privilege as to Pillsbury's prosecution of the Patents in April 2005.      Magma contends that this delay in inexcusable, and that it would be severely prejudiced in its preparation for trial were it required to produce large volumes of privileged documents and provide witnesses for deposition. Synopsys makes several responses. First, it states it knew of Magma's temporal limitation on its waiver only after a deposition in July 2005. Second, it declares it made repeated attempts to meet and confer with counsel for Synopsys. Third, it notes that the privileged documents would be relevant to the willfulness issue, discovery for which does not take place by Court Rules until after a "willfulness disclosure" which was in October 2005. Fourth, it claims that Magma did not produce a complete privilege log until mid-November 2005. Finally, Synopsys notes that in September 2005 it alerted Magma and the court to its intention to bring this motion.

The Special Master finds that Synopsys did not unduly delay in raising this issue with Magma, bringing it to the court's attention, and filing a formal motion only when informal attempts to resolve the dispute had been unsuccessful. Moreover, the court can monitor and reduce any burden on Magma by limiting the extent of any further production and discovery which it will order. Therefore, this motion is not untimely.

SPECIAL MASTER'S ORDER NO. 1: SYNOPSYS'S MOTION RE SCOPE OF PRIVILEGE WAIVER
(Hrg. 2/1/06)
5

## THE GENERAL SCOPE OF THE ORRICK & PILLSBURY WAIVERS

Although for convenience we refer to Magma's waiver as to Orrick's due diligence work as the "Orrick waiver," in reality it was a subject matter waiver that is not necessarily limited to Orrick communications and work product. Although Magma correctly notes that it has not formally asserted a defense of "reliance on advice of counsel, a central purpose of the waiver was to enable Magma to rebut the accusation that it had "willfully" infringed patents which Synopsys rightfully owned. The force of this evidence will depend on the competence of Orrick's opinion, and what Magma was thinking about infringement. Therefore, Synopsys is entitled to obtain evidence necessary to enable it to probe and challenge the competence of Orrick's work, and to ascertain the mindset of Magma's leaders about the legitimacy of its patents.

Similarly, Magma's waiver as to Pillsbury's communications regarding its prosecution of the Patents on Magma's behalf was a subject matter waiver. Magma's apparent purpose for making that waiver was to recognize that, by accusing Dr. van Ginneken of "inequitable conduct" in connection with the prosecution of the Patents, it had put at issue the legitimacy of that prosecution. Therefore, in order for Magma to show that, notwithstanding what Dr. van Ginneken may have done, its own actions in connection with the prosecution were proper and lawful, it felt obliged to use evidence contained in Pillsbury's confidential communications. Accordingly, Synopsys is entitled to obtain evidence that it needs to rebut Magma's claim that its prosecution of the Patents was entirely innocent.

The issues raised by these two waivers are: (1) whether either waiver requires Magma to disclose its communications with law firms other than Orrick and Pillsbury on the subject matters of the due diligence assignment and the patent prosecution, and if so which firms; (2)

whether either waiver extends to communications beyond the filing of the lawsuit; and (3) whether either waiver extends to applications for patents or rights other than the Patents themselves, such as continuations and foreign applications.

### COMMUNICATIONS WITH OTHER LAW FIRMS

In *Sharper Image Corp. v. Honeywell Intern. Inc.*, 22 F.R.D. 621 (N.D. Cal. 2004), a case with features remarkably similar to the present case, the court carefully analyzed the pros and cons of allowing discovery as to confidential communications with law firms other than the specific firm as to which the waiver related. In discussing the waiving party's right to privacy, the court recognized that the popularity of "willfulness" allegations in patent litigation virtually coerces the defendant to disclose its confidential due diligence communications – which should lead courts to be cautious in extending privilege waivers. On the other hand, the court noted the factors normally present in any privilege waiver – the fairness of permitting the non-waiving party to obtain all privileged communications on the subject matter of the waiver. Finally, the court was mindful of the need, particularly acute in patent litigation, to shield if possible the litigation work product of trial counsel. In Sharper Image, stressing that each case turns on its individual facts, the court ordered the disclosure of communications with other firms whose work overlapped the work of opinion counsel, ordered the production of work product regardless of whether it had been disclosed to the client, allowed some disclosure of communications regarding related patents, but did not permit disclosure of the work of litigation counsel. Similar issues arose in *Verizon California, Inc v. Ronald A. Katz Technology Licensing, L.P.,* 266 F. Supp.2d 1144 (C.D. Cal. 2003), which also ordered the disclosure of communications with counsel other than opinion counsel, and ordered the disclosure of communications dealing with validity as well as infringement.

In the present case, the task is, first, to define the scope of the work by Orrick and Pillsbury represented by the communications as to which Magma waived privilege, and second, to decide whether to require the disclosure of other law firm's communications on the same topics. The testimony of the Orrick lead attorney showed that the scope of Orrick's work as to which Magma waived its privilege was to conduct an investigation to determine (a) whether the developers of Magma's source code had brought confidential information from Synopsys or any third party, and (b) whether the source code was developed independently at Magma without the incorporation of intellectual property of any third party. There is no dispute that the scope of Pillsbury's work as to which Magma waived its privilege was the initial prosecution of the Patents through the dates on which they were originally issued.

The court concludes that Magma is obliged to disclose its communications with, and the work product (whether or not communicated to Magma) on those topics with Fish & Richardson and Howard Rice. Magma has represented to the court that O'Melveny & Myers, Milbank Tweed and Pooley and Oliver have acted solely as trial counsel in this case – that they have not given advice on patent issues except in the context of preparation of Magma's claims and defenses in this case. The court has been provided with no evidence to the contrary. Therefore, having conducted the same balancing of interests and objectives as undertaken in *Sharper Image*, the court concludes that it is not appropriate to order production of privileged communications on these topics from O'Melveny, Milbank or the Pooley firm. First, there is no indication that non-litigation advice was given. Second, although much of the work of these firms surely in some tangential form touch on the same topics as the Orrick and Pillsbury work, there is no indication that their communications would give any direct and probative insight into issues such as to competence of Orrick's work, Magma's state of mind concerning infringement, and

SPECIAL MASTER'S ORDER NO. 1: SYNOPSYS'S MOTION RE SCOPE OF PRIVILEGE WAIVER
(Hrg. 2/1/06)
8

Magma's integrity in prosecuting the Patents. Third, it would be unduly burdensome, particularly at this late date in the case, for Magma to have to scour the enormous litigation files of these firms for potentially responsive documents and communications. Also, the prospect of trial counsel having to testify about issues in the case is to be avoided if at all possible.

While Fish & Richardson was also litigation counsel to Magma, it served as counsel for only a brief period. Counsel have not suggested that any burden would be created by requiring review and production of material from Fish & Richardson. Nor have they provided evidence that disclosure of material from Fish & Richardson would jeopardize their position in this litigation.

## TEMPORAL EXTENT OF THE WAIVERS

Synopsys argues that because patent infringement is a continuing wrong it should be entitled to obtain confidential communications on the waived topics up to the present. Magma initially sought to cut them off as of the dates of issuance of the Patents, and later offered to extend the waiver to the date of filing of this action.

As stated above, Magma made a full subject matter waiver when it chose to disclose the Orrick and Pillsbury materials. No cogent reason has been advanced why the court should put a time limit on those waivers – other than to shield Magma's litigation strategy and preparation. That objective can be achieved, as stated above, by exempting the O'Melveny files and communications in their entirety from production. As to the files and communications of the other law firms involved, Synopsys is entitled to discovery of all communications on the identified topics, regardless of when they took place.

EXTENSIONS OF THE SCOPE OF WAIVER RE PATENT PROSECUTION

Synopsys argues that, because Magma has disclosed privileged communications regarding the prosecution of the Patents, it must also disclose all information about the inventions claimed in the Patents, including continuations, foreign patents, and prosecution and enforcement of the Patents themselves. Magma responds that it legitimately treated the initial prosecution of the Patents as a discrete topic that is not implicated by enforcement of those patents or other somewhat-related applications and patents.

Recalling that the central relevance of the waived Pillsbury material was to show that Magma itself was innocent and above-board in prosecuting the patents, the court concludes that there is no solid reason to think that communications regarding enforcement of the Patents, or prosecution of continuation or foreign patents would shed useful and probative light on that subject. Therefore, there is no good reason to conclude that Synopsys requires this material to fairly defend itself against Magma's assertion that its prosecution was proper.

## ORDER

Accordingly, good cause appearing, IT IS ORDERED that:

1. Magma shall produce all documents whenever dated, consisting of or directly relating to the Orrick due diligence assignment, to the extent not already produced, notwithstanding any assertion of privilege or work product.

2. Magma shall produce all documents whenever dated consisting of or directly relating to Pillsbury's work in initially prosecuting the 438 and 446 Patents to the extent not already produced, notwithstanding any assertion of privilege or work product.

3. Magma shall produce all documents whenever dated, notwithstanding any assertion of privilege or work product, from Magma, Fish & Richardson, and Howard Rice, et. al. relating to

1    the following subject matters: (a) whether the developers of Magma's source code had brought

2    confidential information from Synopsys or any third party, (b) whether the source code was

3    developed independently at Magma without the incorporation of intellectual property of any

4

5    third party, and the initial prosecution of the 438 and 446 Patents through the dates on which

6    they were originally issued.

7         4. Subject to court control to alleviate any undue burden or expense, Synopsys is entitled

8    to obtain oral testimony on the subject matter described in (1), (2) and (3) above,

9

10   notwithstanding any assertion of privilege or work product.

11        5. Magma need not produce any documents relevant to this motion located at or

12   generated by O'Melveny & Myers, Milbank, Tweed or Pooley and Oliver or provide oral

13   testimony as to any such documents.

14        6. Magma need not produce any documents, or provide oral testimony, with regard to

15   any patents or applications other than the 438 and 446 Patents.

16

17

18   Dated: March _10_, 2006

19                                              Martin Quinn, Esq.
                                                Special Master
20

21

22

23

24

25

26

27

28

**SPECIAL MASTER'S ORDER NO. 1: SYNOPSYS'S MOTION RE SCOPE OF PRIVILEGE WAIVER**
**(Hrg. 2/1/06)**
11

## **PROOF OF SERVICE BY FACSIMILE & U.S. MAIL**

I, Karen V. Clerici, not a party to the within action, hereby declare that on March 13,

2006 I served the attached Special Master's Order No. 1: Synopsis's Motion Re Scope of

Privilege Waiver on the parties in the within action by facsimile and depositing true copies

thereof enclosed in sealed envelopes with postage thereon fully prepaid, in the United States

Mail, at San Francisco, CALIFORNIA, addressed as follows:

Chris Scott Graham Esq.
Dechert LLP
1117 California Ave.
Palo Alto, CA 94304-1106  USA
Tel: 650-813-4860
Fax: 650-813-4848

George A. Riley Esq.
O'Melveny & Myers LLP
275 Battery St.
Suite 2500
San Francisco, CA 94111-3305
Tel: 415-984-8741
Fax: 415-984-8701

Joseph Spero
U.S. District Court
Northern District
450 Golden Gate Avenue
San Francisco, CA 94102-3483
Tel: 415-556-3031

Michael Edelman Esq.
Dechert LLP
1117 California Ave.
Palo Alto, CA 94304-1106  USA
Tel: 650-813-4857
Fax: 650-813-4848

Christopher D. Catalano Esq.
O'Melveny & Myers LLP
275 Battery St.
Suite 2500
San Francisco, CA 94111
Tel: 415-984-8700
Fax: 415-984-8701

I declare under penalty of perjury the foregoing to be true and correct. Executed at

San Francisco, CALIFORNIA on March 13, 2006.

Karen V. Clerici